## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| JENNIFER KNOBLOCH, individually and on behalf of similarly situated individuals, | ) ) ) | 2017CH16187 CALENDAR/ROOM 07 TIME 00:00 |
| *Plaintiff,* | ) No. ) ) | Class Action |
| v. | ) ) | |
| ABC FINANCIAL SERVICES, INC., an Arkansas corporation, | ) ) ) | JURY TRIAL DEMANDED |
| *Defendant.* | ) ) ) | |

### CLASS ACTION COMPLAINT

Plaintiff Jennifer Knobloch ("Plaintiff"), individually and on behalf of other similarly situated individuals, brings this Class Action Complaint against Defendant, ABC Financial Services, Inc. d/b/a ABC Merchant Services and EON Payment Solutions (collectively, "ABC" or "Defendant"), to stop Defendant's unlawful and unauthorized withdrawals of funds from Plaintiff's and other consumers' bank accounts in violation of the Electronic Funds Transfer Act, 15 U.S.C. §1693 *et seq.* Plaintiff alleges as follows based on personal knowledge as to her own acts and experiences, and as to all other matters, upon information and belief, including an investigation conducted by her attorneys.

### INTRODUCTION

This case is about a financial services company that specializes in providing payment processing services to health clubs and fitness facilities located nationwide, and its illegal practice of routinely making unauthorized withdrawals and collecting unauthorized fees from consumers. In providing its payment processing services, Defendant has gained access to consumers' bank accounts in virtually every state and has made numerous unauthorized

1

withdrawals devoid of any legal or contractual basis. Indeed, despite the existence of multiple lawsuits challenging Defendant's conduct, Defendant has yet to rectify its practices to ensure that it only assesses charges that consumers have specifically authorized. Plaintiff now brings this suit on her own behalf and on behalf of other similarly situated individuals to recover such unauthorized withdrawals and to stop such illegal business practices.

### JURISDICTION AND VENUE

1.  This Court may assert personal jurisdiction over Defendant pursuant to 735 ILCS 5/2-209 in accordance with the Illinois Constitution and the United States Constitution, because Defendant is doing business within this state and because Plaintiff's claims arise out of Defendant's unlawful in-state actions, as Plaintiff entered into a contract with Defendant in this state and Defendant withdrew funds from Plaintiff's Illinois bank account.

2.  Venue is proper in Cook County pursuant to 735 ILCS 5/2-101, because Defendant conducts business in Cook County and thus resides there under § 2-102, Defendant knowingly sells its products and services to businesses located in Cook County, and because a substantial part of the conduct giving rise to the claim in this matter originated in Cook County.

### PARTIES

3.  Defendant ABC Financial Services, Inc., is an Arkansas corporation that conducts business in Illinois and elsewhere throughout the nation.

4.  Plaintiff is a resident and citizen of the State of Illinois.

### COMMON FACTUAL ALLEGATIONS

5.  ABC provides payment processing services for health clubs and other merchants in Illinois and elsewhere throughout the nation.

6.     As part of the agreement to sign up for a membership at a health club facility or some other recurring service, consumers including Plaintiff enter into a contractual relationship with Defendant to allow it to withdraw authorized funds via electronic funds transfer directly from their bank accounts. In this way, consumers pay for their monthly health club dues and related services directly to Defendant, and such payments are then remitted in part to Defendant's health club partners.

7.     This practice of health clubs utilizing a third-party payment processor such as Defendant to collect fees directly from their customers has become commonplace nationwide. As such, Defendant has become one of the largest such payment processors in the nation, processing tens, if not hundreds, of millions of dollars in health club and other fees annually.

8.     What is less understood is that once Defendant obtains direct access to consumers' bank accounts such as Plaintiff's, Defendant thereafter regularly and routinely charges consumers for services that they did not request, approve or authorize. Indeed, Defendant's practice is to collect unauthorized payments and fees directly from consumers' bank accounts under the assumption that such consumers will be ignorant of such collection.

9.     The Electronic Fund Transfer Act, 15 U.S.C. §1693 *et seq.*, ("EFTA") governs such transactions. Under the EFTA, a preauthorized electronic funds transfer is defined as "an electronic fund transfer authorized in advance to recur at substantially regular intervals." 15 U.S.C. §1693a(9). The EFTA also specifically prohibits entities such as Defendant from making *unauthorized* electronic fund transfers, whether or not they are recurring. 15 U.S.C. §1693g(e).

### COMMON FACTUAL ALLEGATIONS

10.     On or about March 4, 2017, Plaintiff visited Crunch Fitness ("Crunch"), a health club located in Schaumburg, Illinois, for the purpose of purchasing a gym membership.

3

11.     Plaintiff accepted Crunch's offer of a membership for $9.95 per month and agreed to execute a contract. Crunch's employee then prepared an electronic document on a Crunch computer and read certain portions of the document to Plaintiff as it was being prepared.

12.     Crunch's employee repeatedly asked Plaintiff to provide her signature on an electronic pad, and Plaintiff provided such signatures. Crunch's employee did not provide Plaintiff with a copy of this document (the "Membership Agreement") before asking for Plaintiff's electronic signatures. Plaintiff was also asked to provide her payment information in the form of her checking account number.

13.     After Plaintiff had completed and signed the Membership Agreement and provided her checking account information, Plaintiff received a copy of the Membership Agreement by email. It was only at this time that Plaintiff learned that ABC was also a party to the Membership Agreement and was the entity responsible for withdrawing payment from her bank account.[1]

14.     Specifically, the Membership Agreement Plaintiff signed with ABC and Crunch permitted ABC to withdraw the $9.95 monthly membership fee, a $39.00 annual "Club Enhancement fee," and other pre-authorized amounts from Plaintiff's checking account.

15.     Prior to Plaintiff receiving the Membership Agreement, and at the time that she provided her payment information to Crunch's employee, Plaintiff was never told that ABC would use her checking account information to give ABC and Crunch continuous and long-term access to her financial account to deduct unauthorized amounts and fees.

***Defendant Collects Unauthorized Charges from Plaintiff***

16.     Several months after originally entering into the Membership Agreement, on or about June 29, 2017, Plaintiff elected to enroll in a personal training program at Crunch. While

---

[1] A true and correct copy of the Membership Agreement is attached hereto as <u>Exhibit A</u>.

the personal training sessions normally cost $55.00 each, Plaintiff received a discounted rate of $42.50 per personal training session in exchange for signing a separate three-month contract with Crunch and ABC (the "PT Agreement").

17.     Under the three-month PT Agreement – which was substantially identical to the original Membership Agreement – Plaintiff was to receive four personal training sessions each month for a cost of $170.00 per month. The total cost of the PT Agreement was to be $510.00— $170 per month for three months.[2]

18.     While Plaintiff was again asked to provide her signature electronically to execute the PT Agreement, she was not asked to provide payment information, and her checking account information was instead automatically transferred from her Membership Agreement to the PT Agreement. As with the Membership Agreement, Plaintiff did not see the PT Agreement at the time that it was executed and only received it at a later time by email.

19.     Pursuant to the terms of the PT Agreement that she had agreed to, Plaintiff pre-authorized a total of *three* payments in the amount of $170.00 from her bank account.

20.     ABC subsequently withdrew three payments of $170.00 from Plaintiff's bank account – on July 3, 2017, August 1, 2017, and August 30, 2017 – for a total of $510.00 in connection with the PT Agreement.

21.     On October 2, 2017, however, ABC unlawfully withdrew a *fourth* payment of $170.00 from Plaintiff's bank account. This withdrawal was made by ABC without the pre-authorization or consent of Plaintiff. Plaintiff's three-month PT Contract had already been paid in full at the time of the fourth withdrawal of $170.00 and Plaintiff received no services in exchange for the unauthorized and unaccounted for $170.00 withdrawal.

_____

[2] A true and correct copy of the PT Agreement is attached hereto as Exhibit B.

22.     ABC misrepresented this unauthorized fourth payment of $170.00 as a "PREAUTHORIZED DEBIT ABC FINANCIAL CLUBCHARGE – CRUNCH FITNESS 8 47-233-1232" on Plaintiff's bank statement, thereby attempting to deceive Plaintiff into believing that the charge was pre-authorized.

23.     Plaintiff subsequently cancelled her gym membership with Crunch.

24.     ABC's withdrawal of the fourth unauthorized payment not only constituted a breach of the contract it had entered into with Plaintiff, but it was also a violation of the EFTA and an unfair and deceptive business practice.

25.     Furthermore, had ABC's unauthorized withdrawal of funds from Plaintiff's account been returned or rejected for insufficient funds, Plaintiff would have been charged additional service fees and late fees pursuant to her agreement with ABC.

26.     Additionally, ABC not only withdraws unauthorized funds from consumers' accounts, but it also attempts to prevent consumers from refusing such charges by failing to provide the required notice of such withdrawals. In both the Membership Agreement and the PT Agreement, ABC includes the following language in small print:

> If the regular payments set forth on the payment schedule should vary in amount, you are entitled to notice at least 10 days before each payment of when it will be made and how much it will be. However, by executing this preauthorization, you choose instead to get this notice only when the payment would differ by more than $50.00 from the most recent payment.[3]

27.     However, under §1693*l* of the EFTA, even by way of writing or other agreement, consumers cannot waive the rights conferred by the EFTA, including under § 1693e(b), to receive "advance notice" of any preauthorized transfers that may vary in amount, *regardless* of the amount.

---

[3] See Exhibit A and Exhibit B, Subsection (6).

6

28.     Accordingly, ABC willfully misrepresented to Plaintiff that she had agreed to forego receiving notice of fund withdrawals that were as much as $50.00 higher than any amount she previously paid.

29.     Another term of Plaintiff's PT Agreement and Membership Agreement was that ABC would withdraw funds from Plaintiff's account only once each month unless Plaintiff was otherwise notified that withdrawals would occur on multiple dates.[4]

30.     However, ABC regularly makes electronic funds transfers from consumers' accounts more than once every month without notifying them. For example, ABC made electronic funds transfers from Plaintiff's checking account on August 1, 2017, and then again on August 30, 2017, without Plaintiff being notified that her account would be debited multiple times during the same month.

31.     Furthermore, Defendant's contract requires Plaintiff and other consumers to pay Defendant additional service fees for insufficient funds or nonpayment of the underlying charge for any other reason, even if the underlying withdrawal itself is unauthorized, as in Plaintiff's case. As such, Defendant routinely exploits this provision of its contract by assessing consumers unauthorized late fees and other charges or simply threatening to do so.[5]

**32.**     ABC has entered into hundreds, if not thousands, of similar contracts with individuals in Illinois and elsewhere throughout the nation, and other consumers have complained of ABC having withdrawn unauthorized funds from their accounts under circumstances similar to Plaintiff's.

## CLASS ACTION ALLEGATIONS

33.     Plaintiff brings this action on behalf of herself and similarly situated individuals pursuant to 735 ILCS § 5/2-801. Plaintiff seeks to represent a Class and Subclass defined as follows:

---

[4] See Exhibit A and Exhibit B, Page 2, Section (1.7): Form of Payment.
[5] See Exhibit A, Subsection (6).

> **The Class:** All individuals who had funds withdrawn from their bank accounts during the applicable limitations period by ABC through an electronic fund transfer for which ABC did not have written authorization as shown by ABC's records.
>
> **The Subclass:** All Illinois residents who had funds withdrawn from their bank accounts during the applicable limitations period by ABC through an electronic fund transfer for which ABC did not have written authorization as shown by ABC's records.

34.     Excluded from the Class and Subclass are any members of the judiciary assigned to preside over this matter; any officer or director of ABC; and any immediate family member of such officer or director.

35.     Upon information and belief, there are hundreds, if not thousands, of members of the Class and Subclass, making the members of the Class and Subclass so numerous that joinder of all members is impracticable. Although the exact number of members of the Class and Subclass is currently unknown to Plaintiff, the members can be readily identified through Defendant's records.

36.     Plaintiff's claims are typical of the claims of the Class and Subclass members she seeks to represent, because the factual and legal bases of ABC's liability to Plaintiff and the other Class and Subclass members are the same, and because ABC's conduct has resulted in similar injuries to Plaintiff and to all of the other members of the Class and Subclass. As alleged herein, Plaintiff and the other putative Class and Subclass members have all suffered damages as a result of ABC's unauthorized fund withdrawals and contractual breaches.

37.     There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class and Subclass, and those questions predominate over any questions that may affect individual members of the Class and Subclass. Common questions for the Class and Subclass include, but are not limited to, the following:

a.     Whether ABC entered into contracts with Plaintiff and the other members of the Class that authorized certain electronic fund transfers;

b.     Whether ABC withdrew payments from consumers' accounts via electronic fund transfer without valid prior written authorization;

8

c.    Whether ABC breached its contracts with Plaintiff and the other members of the Class by withdrawing unauthorized payments;

d.    Whether ABC withdrew funds from consumers' accounts multiple times each month;

e.    Whether ABC's conduct was deceptive or unfair; and

f.    Whether ABC was unjustly enriched.

38.    Absent a class action, most members of the Class and Subclass would find the cost of litigating their claims to be prohibitively expensive, and would have no effective remedy. The class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication.

39.    Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class and Subclass she seeks to represent. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class and Subclass and have the financial resources to do so. Neither Plaintiff nor her counsel has any interest adverse to those of the other members of the Class and Subclass.

40.    Defendant has acted and failed to act on grounds generally applicable to the Plaintiff and the other members of the Class and Subclass, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and Subclass making injunctive or corresponding declaratory relief appropriate for the Class and Subclass as a whole.

## COUNT I
### Breach of Contract
### (on behalf of Plaintiff and the Class)

41.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

42.    ABC entered into contracts with Plaintiff and the other members of the Class.

9

43.     A material term of each such contract was that ABC was permitted to withdraw from Plaintiff's and the other Class members' financial accounts only those funds that they had specifically authorized ABC to withdraw.

44.     ABC breached its contracts with Plaintiff and the other members of the Class by withdrawing funds from the Plaintiff's and the other Class members' accounts that it was never authorized to withdraw.

45.     ABC also breached its contracts with Plaintiff and the other members of the Class by withdrawing funds from their accounts more than once in a given month without providing them advance notification that electronic funds transfers would occur on multiple dates during the month.

46.     Plaintiff and the other Class members have been damaged as a result of ABC's breaches by the amounts ABC unlawfully withdrew from their accounts, as well as any late fees, services fees, and other charges that they incurred as a result of the unlawful withdrawals.

47.     Plaintiff and the other Class members are entitled to an award of actual and compensatory damages for all damages sustained as a result of Defendant's wrongdoing, in amounts to be proven at trial.

## COUNT II
### Violations of the Electronic Fund Transfer Act, 15 U.S.C. §1693 *et seq.*
### (on behalf of Plaintiff and the Class)

48.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

49.     Plaintiff maintained an "account" as defined by 15 U.S.C. §1693a(2).

50.     Plaintiff is a "consumer" as defined by 15 U.S.C. §1693a(5).

51.     ABC engaged in "pre-authorized electronic funds transfers" as that term is defined by 15 U.S.C. §1693a(9).

52.     ABC engaged in "unauthorized electronic funds transfers" as that term is defined by 15 U.S.C. §1693a(11) by withdrawing funds from Plaintiff's and the other Class members' accounts without their actual consent and without providing a copy of any written authorization.

53. ABC also violated 15 U.S.C. §1693e(a) by failing to provide a copy to Plaintiff and the other Class members of any written authorization to withdraw any funds from their accounts at the time of the purported authorization.

54. Plaintiff and the other Class members are entitled to actual damages sustained as a result of ABC's conduct; statutory damages per violation of the EFTA in an amount to be determined at trial; costs of the action; and reasonable attorneys' fees pursuant to 15 U.S.C. §1693m.

**COUNT III**
**Unjust Enrichment (in the alternative)**
**(on behalf of the Class)**

55. Plaintiff incorporates the foregoing paragraphs 1 through 40 and 48 through 54 as if fully set forth herein.

56. Plaintiff brings this Count in the alternative, to the extent that the Court finds that there were no valid contracts between Plaintiff and the other Class members, on the one hand, and Defendant, on the other hand.

57. Plaintiff and the other Class members have conferred a benefit upon ABC because, upon information and belief, ABC retains a percentage of each electronic fund withdrawal that it processes on behalf of the merchants with which it partners, such that it retained some of the unauthorized funds that it withdrew from Plaintiff and the other Class members' accounts.

58. Upon information and belief, ABC is aware of this benefit and has knowingly accepted this benefit that was not knowingly and voluntarily provided by Plaintiff and the other Class members.

59. It is inequitable and unjust for ABC to retain any of the funds that it obtained from its unauthorized withdrawals from Plaintiff's and the other Class members' accounts.

60. Accordingly, because ABC will be unjustly enriched if it is allowed to retain such funds, ABC must pay restitution to Plaintiff and the other Class members in the amount which it was unjustly enriched from each unauthorized withdrawal.

11

**COUNT IV**
**Violations of the Illinois Consumer Fraud and Deceptive Business Practices**
**Act, 815 ILCS 505/2**
**(on behalf of Plaintiff and the Subclass)**

61.     Plaintiff hereby incorporates all of the foregoing allegations as if fully set forth herein.

62.     The ICFA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices" including "the use or employment of any deception, fraud . . .[and] misrepresentation . . . of any material fact, with intent that others rely upon the concealment, suppression or omission[.]" 815 ILCS § 505/2.

63.     The ICFA also prohibits the "use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act.'" 815 ILCS § 505/2. Such practices include "engag[ing] in any other conduct which . . . creates a likelihood of confusion or misunderstanding." 815 ILCS § 510/2(a)(12).

64.     Plaintiff and the other members of the Subclass are "consumers" within the meaning of Section 1(e) of the ICFA, because ABC's activities involve trade or commerce, are addressed to the market generally, and implicate consumer protection concerns.

65.     ABC engaged in deceptive and unfair business practices by gaining access to Plaintiff's and the other Class members' financial accounts as part of its position as a payment processor for health clubs and other vendors. In its contracts, ABC omits the fact that it retains long term access to Plaintiff and the other Class members' accounts and withdraws funds from such accounts without consent or legal basis.

66.     ABC also engaged in deceptive and unfair conduct in violation of the ICFA because after making unauthorized withdrawals, ABC misrepresents to consumers that it is charging them "pre-authorized" fees regarding their gym memberships when in fact there was no underlying legal basis for withdrawing any such funds. This conduct is deceptive because consumers trusted ABC to withdraw only pre-authorized funds from their accounts and relied on ABC to accurately portray electronic funds transfers it was making from their accounts.

12

67.     Instead, ABC makes unauthorized withdrawals without the Subclass members' prior knowledge or consent and then misrepresents such unauthorized withdrawals as being "pre-authorized" on consumers' bank account statements. ABC intends that Plaintiff and other Subclass members rely on these misrepresentations.

68.     Consumers like Plaintiff have relied on these misrepresentations and were thereby deceived as to the propriety of unauthorized charges and are therefore less likely to become aware of and subsequently challenge the unauthorized charges.

69.     Plaintiff and the other members of the Subclass would have acted differently, and would not have entered into any contract with ABC, had they known ABC was going to make unauthorized withdrawals and then misrepresent such withdrawals as being pre-authorized.

70.     As a direct and proximate cause of ABC's deceptive and unfair trade practices in violation of the ICFA, Plaintiff and the other members of the Subclass suffered actual damages, including monetary losses, and pursuant to 815 ILCS 505/10a are entitled to damages in an amount to be proven at trial; reasonable attorneys' fees; injunctive relief prohibiting ABC's unfair and deceptive conduct going forward; and any such other and further awards, penalties, and relief that may be appropriate under applicable law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the proposed Class and Subclass, respectfully requests that this Court enter an Order:

a.     Certifying the Class and Subclass as defined above, appointing Plaintiff as class representative and appointing the undersigned as class counsel;

b.     Awarding actual and compensatory damages to Plaintiff and the other members of the Class and Subclass for all damages sustained as a result of Defendant's wrongdoing, in amounts to be proven at trial;

c.     Awarding statutory damages for each violation of the EFTA pursuant to 15 U.S.C. §1693m;

d.     Awarding restitution, disgorgement, or such other equitable relief as the Court

13

deems proper;

e.      Enjoining Defendant from continuing to make unlawful electronic fund withdrawals;

f.      Awarding reasonable attorneys' fees, costs, and other litigation expenses; and

g.      Awarding such further and other relief as the Court deems just and equitable.

**JURY DEMAND**

Plaintiff requests trial by jury of all claims that can be so tried.

Dated: December 7, 2017                Respectfully Submitted,

JENNIFER KNOBLOCH, individually and on behalf of a class of similarly situated individuals

By: _____

          One of Her Attorneys

Myles McGuire
Evan M. Meyers
David L. Gerbie
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
Fax: (312) 275-7895
Firm ID: 56618
mmcguire@mcgpc.com
emeyers@mcgpc.com
dgerbie@mcgpc.com

*Attorneys for Plaintiff and the Putative Class*

14

# Crunch Schaumburg
616 East Golf Road
Schaumburg, IL 60173
(847)-233-1232

| | |
|---|---|
| Club # 5920 Agreement #: | 5920-01610 |
| Date: | 03/04/2017 |
| Agreement Type: | New |

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of sex or marital status. The agency that administers compliance with the law is the Federal Trade Commission, Equal Credit Opportunity, Washington, D.C. 20580.

| Jennifer | Knobloch | | |
|---|---|---|---|
| First Name | Last | Middle Initial | Social Security # |

| 1415 nottingham lane | Hoffman Estates | IL | 60169 |
|---|---|---|---|
| Street Address | City | State | Zip Code |

| (847) 714-3140 | | 05/12/1993 | Female |
|---|---|---|---|
| Primary Phone Number | Work Phone | Birth Date | Gender |

| | |
|---|---|
| In Case of Emergency, Call (Name) | Emergency Phone |

| | |
|---|---|
| Drivers License # | Employer | Occupation |

| Guest Pass - Trial Membership | | knoblochj2@yahoo.com |
|---|---|---|
| Source | Cell Phone | E-Mail Address |

## Membership Privileges, Notices, Disclosures & Agreements

MEMBERSHIP TYPE: **BASE**

RENEWAL PROGRAM OPTIONS:

[X] AUTOMATIC RENEWAL PROGRAM:
Provided that Member is not in default of this agreement and subject to the terms and conditions hereof, the membership will automatically renew for the rate indicated below. Renewal terms may be cancelled at any time provided a 10-day written notice is delivered to the club's address. It is also understood that the club has the option to increase monthly renewal dues without notice during any renewal period not to exceed $ 0.00 per month.

TOTAL AMOUNT $ 9.95 PER MONTH FOR FUTURE AUTOMATIC RENEWAL.

Member's Initials: _(initials)_

[ ] NONRENEWABLE MEMBERSHIP:
This membership will expire: _____

An annual Club Enhancement fee of $ 39.00 will be billed on 05/31/2017 and on the same date each year thereafter.

Member's Initials _(initials)_

Notwithstanding any other provisions of this Agreement, you understand and agree that the amount of your monthly membership dues is based on current sales tax rates and to the extent such rates should increase during your membership, the club has the right to increase your monthly membership dues by the amount of such increase. If you have requested the privilege of paying your monthly dues by pre-authorized electronic funds transfer, the monthly amount so transferred will be adjusted to reflect any increase in the sales tax rate.

| | | |
|---|---|---|
| 1. | Your Membership Begins: | 04/01/2017 |
| 2. | Your Membership Expires: | 04/01/2018 |
| 3. | Enrollment Fee: | $ 0.00 |
| 4. | Processing Fee: | $ 10.00 |
| 5. | First Month Dues: | $ 9.95 |
| 6. | Prorated Annual Fee: | $ 0.00 |
| 7. | Amount Paid Today: | $ 19.95 |

DEFAULT AND LATE PAYMENTS: Should you default on any payment obligation as called for in this agreement, the club will have the right to declare the entire remaining balance due and payable and you agree to pay applicable interest, and all costs of collection, including but not limited to collection agency fees, court costs, and attorney fees. A default occurs when any payment due under this agreement is more than ten days late. A SERVICE FEE WILL BE CHARGED IMMEDIATELY FOR ANY CHECK, DRAFT, CREDIT CARD, OR ORDER RETURNED FOR INSUFFICIENT FUNDS OR ANY OTHER REASON. SHOULD ANY MONTHLY PAYMENT BECOME MORE THAN THREE DAYS PAST DUE, YOU WILL BE CHARGED A LATE FEE. If the Member is paying monthly dues by electronic funds transfer (EFT), the club's billing company, ABC Financial Services, Inc., reserves the right to draft via EFT all amounts owed by the member including any and all late fees and service fees. Subject to appropriate State and Federal Law NOTE: Members paying monthly dues by E.F.T. are subject to $10.00 per month increase of monthly dues if E.F.T. payment is stopped or changed. This will not affect any other provisions of this agreement.

| 1st Pay. Schedule : | DUES | | |
|---|---|---|---|
| Number of Payments | Monthly Payment Amount | Payment Due Date |
| 11 | $ 9.95 | 05/01/2017 |

| 2nd Pay. Schedule : | | | |
|---|---|---|---|
| Number of Payments | Monthly Payment Amount | Payment Due Date |
| | | |

**NOTICE**: ANY HOLDER OF THIS AGREEMENT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF, RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

CHICAGO FIT VENTURES, LLC ("CHICAGO FIT VENTURES, LLC") IS THE OWNER OF THIS FACILITY AND FITNESS CENTER OPERATION AND HAS BEEN LICENSED BY AN AFFILIATE OF CRUNCH, LLC TO USE THE CRUNCH FITNESS MARKS IN CONNECTION WITH ITS OPERATION. NEITHER CRUNCH, LLC NOR ANY RELATED ENTITY IS THE OWNER OF THIS SCHAUMBURG FACILITY AND FITNESS CENTER OPERATION. NEITHER CRUNCH, LLC NOR ANY RELATED ENTITY IS CONTRACTUALLY OR OTHERWISE LIABLE TO YOU AS CHICAGO FIT VENTURES, LLC IS SOLELY LIABLE FOR THE DEBTS AND OBLIGATIONS OF THIS FACILITY AND FITNESS CENTER OPERATION.

| _(signature)_ | _(signature)_ |
|---|---|
| CLUB REPRESENTATIVE | MEMBER |
| | Parent or Guardian Signature: |
| | PARENT OR GUARDIAN |

## abc FINANCIAL

PLEASE ATTACH A VOID OR BLANK CHECK
REQUEST FOR PREAUTHORIZED PAYMENT
I/We hereby request the privilege of paying to ABC Financial Services, Inc ("The Company"), Sherwood, AR 72124, and further authorize the Company to draw items (checks, electronic fund transfers, charge card) for the purpose of paying said payments, including any late fees or service fees, on the account of

**REQUIRED FOR ALL EFT AND CREDIT CARD DRAFT ACCOUNTS**

Payment Method: EFT

| FIRST MIDWEST BANK | 071901604 | XXXXX9780 | Checking | Jennifer Knobloch |
|---|---|---|---|---|
| BANK NAME | ROUTING NUMBER (9 DIGITS) | ACCOUNT NUMBER | ACCOUNT TYPE | ACCOUNT OWNER |

| | | | |
|---|---|---|---|
| CARD TYPE | ACCOUNT NUMBER | EXPIRATION M/Y | CARD OWNER |

Subject to the following conditions:
(1) The items will be drawn on or about the date or dates of the Payment Schedule. The transactions on your bank statement will constitute receipts for payment on your account.
(2) The items will be drawn on the Payment Schedule should vary in amount, you are entitled to notice at least 10 days before each payment of when it will be made and how much it will be. However, by executing this preauthorization, you choose to instead get this notice only when the payment would differ by more than $50.00 from the most recent payment.
(3) By executing this agreement, you acknowledge your awareness that certain disclosures required by the Electronic Funds Transfer Act and its regulations are available for your review at the Company's website: www.abcfinancial.com under terms and conditions.
(4) The privilege of making payments under this arrangement may be revoked by the Company if any item is not paid upon presentation.
(5) If this preauthorization arrangement is revoked for any reason, this does not release you from your obligation (Payment Schedule).
(6) A service fee will be assessed and drafted for any check, draft, credit card, or order returned for insufficient funds or any other reason. A late fee will be assessed and drafted should any monthly payment become past due.
(7) This preauthorization payment arrangement shall apply to the following Applicant(s):

| Date 03/04/2017 | | Account Holder Signature _(signature)_ |
|---|---|---|

**ADDITIONAL MEMBERSHIP AGREEMENT TERMS**

**1. MEMBERSHIP PAYMENT AND TERMS**

**(1.1) Description of Services.** This is a club membership agreement and not an optional services agreement such as personal training which is a separate agreement. This club membership agreement entitles Member to access the facility designated above during business hours. This club membership agreement provides Member access to cardiovascular, strength and conditioning machines. It also provides Member access to certain exercise classes if available at the facility.

**(1.2) Rules, Regulations and Schedules.** Member agrees to abide by the rules, regulations and schedules of CHICAGO FIT VENTURES, LLC, which may be posted at a facility or issued orally, and which may be amended from time to time at CHICAGO FIT VENTURES, LLC sole discretion. Upon joining, Member and/or Buyer must pay the appropriate initial charges. At the sole discretion of CHICAGO FIT VENTURES, LLC, a Member's membership may be revoked or suspended at any time if in the judgment of CHICAGO FIT VENTURES, LLC: (a) Member consistently fails to observe the Rules and Regulations, (b) has otherwise behaved in a manner contrary to the best interests of CHICAGO FIT VENTURES, LLC or any of CHICAGO FIT VENTURES, LLC Members, (c) Member has instituted any type of legal action against CHICAGO FIT VENTURES, LLC, including but not limited to civil actions, arbitrations and/or mediations, and/or (d) CHICAGO FIT VENTURES, LLC has instituted any type of legal action including but not limited to civil actions, arbitrations and/or mediations against Member.

**(1.3) Member's Obligation.** Member and/or Buyer shall not be relieved of the obligation to make payments agreed to and no deduction from any payment shall be made because of Member's failure to use the CHICAGO FIT VENTURES, LLC facilities. Dues are for the period stated in the Agreement.

**(1.4) Initiation Fee.** There may be a one-time Initiation fee which Member and/or Buyer shall be required to pay upon execution of the agreement and acceptance of these Terms and Conditions which CHICAGO FIT VENTURES, LLC or as otherwise agreed to by CHICAGO FIT VENTURES, LLC. This fee will change from time to time at CHICAGO FIT VENTURES, LLC's discretion. This fee is nonrefundable. Resignation from CHICAGO FIT VENTURES, LLC shall not terminate the obligation to pay the Initiation fee in full. There will be no further Initiation fee as long as the Membership has not terminated or expired.

**(1.5) Monthly Dues, Annual Fee, and other Fees.** Member or Buyer shall pay, in advance, monthly Membership dues as set forth in the agreement. CHICAGO FIT VENTURES, LLC has the right to add to the monthly Membership dues any tax imposed by the government.

**(1.6) Prepaid Membership Renewal Amount.** CHICAGO FIT VENTURES, LLC will automatically renew all renewable memberships at subsequent renewal rate if membership is not canceled prior to expiration date. CHICAGO FIT VENTURES, LLC has the right to add to the Prepaid Membership any tax imposed by the government.

**(1.7) Form of Payment.** Monthly dues and incidental charges are payable by Electronic Funds Transfer ("EFT") from the Member or Buyer's checking account, savings account, credit card account, or debit card account. Members or Buyers must authorize payments to be made through a third party administered electronic funds transfer system. Members or Buyers maintain full control and privacy over their accounts at all times, and the transfer of the funds affects only those fees that have prior authorization of the Member or Buyer. The transfer will take place automatically once every month unless CHICAGO FIT VENTURES, LLC notifies the Member or Buyer otherwise. If CHICAGO FIT VENTURES, LLC does not collect Member's monthly dues using the form of payment provided by the Member or Buyer, then CHICAGO FIT VENTURES, LLC may continue attempting to collect Member's monthly dues, plus any applicable fees, using the form of payment provided by the Member or Buyer. If you provide us with more than one method of payment, you authorize us to charge any amounts you may owe us including, but not limited to, any membership-related obligations, retail transactions, and/or online purchases to any form of payment which you have provided us until such time as you revoke your authorization for that method of payment by written notification delivered to the club in person or preferably via certified mail to the address listed above.

**(1.8)** Dishonored Check or Credit Card. If any check, account debit, or credit card charge payable to CHICAGO FIT VENTURES, LLC by Member and/or Buyer is returned, rejected or dishonored, CHICAGO FIT VENTURES, LLC management shall, in each instance (a) assess a charge equal to any charge imposed by the financial institution, any costs and expenses incurred in connection with collection plus an administrative fee which may be adjusted from time to time, and (b) collect the current and past due balance owed CHICAGO FIT VENTURES, LLC in any subsequent month.

**(1.9)** Limited Memberships. Memberships may be limited so that Members may have reasonable access to CHICAGO FIT VENTURES, LLC facilities. It is to be expected that there may be occasional delays, especially during peak hours, in using the fitness equipment; or that Members may not always be able to attend preferred exercise classes. The availability of classes and equipment are subject to demand and are available on a first-come first-served basis.

**(1.10)** Unpaid Balances. All balances owed by Member and or Buyer that are 30, 60 and 90 days in arrears are subject to monthly service charges of $15 per month in arrears. These fees may be adjusted from time to time. Any unpaid balances for membership fees, goods or services past thirty (30) days may result in suspension of membership privileges. Members and/or Buyer shall be obligated to pay any cost incurred by CHICAGO FIT VENTURES, LLC for collection. The renewal fee for paid in full annual memberships must be paid by 12:00 midnight on the anniversary date of the annual membership or Member's privilege to use CHICAGO FIT VENTURES, LLC facilities may be suspended and a new initiation fee will be required. CHICAGO FIT VENTURES, LLC reserves the right to charge past due balances, plus applicable charges, to the Membership account under the EFT authorization.

**(1.11)** Membership Term. The period covered by the first month's dues, as well as any additional days of Membership for which payment is received by CHICAGO FIT VENTURES, LLC, are the "Paid Period" for the Dues Membership. The "Paid Period" is the term of this Membership Agreement.

**(1.12)** CANCELLATION POLICIES:

1. The contract may be cancelled by the customer within 3 business days after the first business day after the contract is signed by the customer, and that all monies paid pursuant to said contract shall be refunded to the customer. For the purposes of this Section, business day shall mean any day on which the facility is open for business.

   A customer purchasing a plan at a facility which has not yet opened for business at the time the contract is signed, or who does not purchase a contract at an existing facility, shall have seven calendar days in which to cancel the contract and receive a full refund of all monies paid. In the event that the facilities and services contracted for are not available within 12 months from the date the contract is entered into, or within 3 months of 7/1/2016, whichever is earlier, the contract may be cancelled at the option of the customer, and all payments refunded within 30 days of receipt by the center of the cancellation notice.

   The customer's rights to cancel described herein are in addition to any other contract rights or remedies provided by law.

2. In the event of the relocation of a customer's residence to farther than 25 miles from the center's facilities, and upon the failure of the original center to designate a center, with comparable facilities and services within 25 miles of the customer's new residence, which agrees to accept the original center's obligations under the contract, the customer may cancel the contract and shall be liable for only that portion of the charges allocable to

the time before reasonable evidence of such relocation is presented to the center, plus a reasonable fee if so provided in the contract, but such fee shall not exceed 10% of the unused balance, or $50.00, whichever is less.

3. If the customer, because of death or disability, is unable to use or receive all services contracted for, the customer, or his estate as the case may be, shall be liable for only that portion of the charges allocable to the time prior to death or the onset of disability. The center shall in such event have the right to require and verify reasonable evidence of such death or disability.

4. Notice of cancellation shall be made in writing and delivered by certified or registered mail to the center at the address specified in the contract. All refunds to which a customer or his estate is entitled shall be made within 30 days of receipt by the center of the cancellation notice.

NOTICE OF STATUTORY REQUIREMENTS (§ 815 ILCS 645):

Every contract for physical fitness services shall set forth the customer's total payment obligation for services to be received pursuant to the contract.

No contract for basic physical fitness services shall require payment of a total amount in excess of $2,500 per year, and every such contract must so provide in writing; except that this limit shall not apply to any contract for: (1) family or couple memberships, or (2) group memberships, where the purchaser is a corporation or other business entity or any social, fraternal or charitable organization not created for the purpose of encouraging this contractual arrangement. No contract for family or couple memberships for basic physical fitness services shall require payment in excess of $2,500 per year per person covered under the membership.

No contract for physical fitness services shall require payments or financing over a period in excess of 3 years from the date the contract is entered into, nor shall the term of any such contract be measured by the life of the customer. The initial term of services to be rendered under the contract may not extend over a period of more than 2 years from the date the parties enter into the contract; provided that the customer may be given an option to renew the contract for consecutive periods of not more than one year each for a reasonable consideration not less than 10% of the cash price of the original membership.

No contract for physical fitness services shall require or entail the execution of any note by the customer which, when separately negotiated, will cut off as to third parties any right of action or defense which the customer may have against the physical fitness center. No right of action or defense arising out of a contract for physical fitness services which the customer has against the center shall be cut off by assignment of the contract whether or not the assignee acquires the contract in good faith and for value. Such an assignee is not a holder in due course.

All contracts for basic physical fitness services which may be in effect between the same center and the same customer, the terms of which overlap for any period, shall be considered as one contract for the purposes of this Act. No physical fitness center may sell, induce, or permit any purchaser of basic physical fitness services to become obligated directly or contingently under more than one contract for services at the same time for purposes of avoiding the provisions of this Act.

Any waiver by the customer of the provisions of this Act shall be void and unenforceable.

Any contract for physical fitness services which does not comply with the applicable provisions of this Act shall be void and unenforceable.

If any court finds, as a matter of law, that a contract or any provision thereof was unconscionable when made, the court may refuse to enforce the contract, enforce the remainder of the contract without the unconscionable provision, or limit the application of any unconscionable provision to avoid an unconscionable result.

Unfair or deceptive acts and practices are prohibited, including but not limited to: use of deception sales tactics; misrepresentation of the quality, benefits or nature of services; misrepresentation of the qualifications or numbers of personnel, or the present or maximum number of customers who may contract to use the facilities of the center; or misrepresentation of the skills or abilities of any customer or potential customer.

Any contract for physical fitness services entered into in reliance upon any false, fraudulent, or misleading information, representation, notice, or advertisement of the physical fitness center or any of its employees or agents shall be void and unenforceable.

**(1.12.1)** Written Requests. Memberships cannot be cancelled by phone or verbal conversation. Cancellation requests will only be honored if sent in writing or filled out at a CHICAGO FIT VENTURES, LLC facility. All paperwork is deemed a request until CHICAGO FIT VENTURES, LLC employee can validate paperwork and approve such cancellation. A cancellation that has been denied will be sent in writing back to Member along with reason of denial or instructions for acceptance and refund.

**(1.12.2)** Cancellation of Monthly Membership. **(1.12.9.1)** If you have a monthly payment membership, you may terminate this Membership Agreement by providing at least ten (10) days notice prior to the next bill date to CHICAGO FIT VENTURES, LLC delivered (a) by U.S. mail to CHICAGO FIT VENTURES, LLC at 616 EAST GOLF ROAD SCHAUMBURG, IL 60173 or (b) by hand to the manager of your Schaumburg facility. The termination will be effective at the end of the Paid Period, and you may continue to use the facility during the Paid Period CHICAGO FIT VENTURES, LLC shall not charge your credit card or initiate any EFT payments which are scheduled to occur more than ten (10) days after the termination notice is received by CHICAGO FIT VENTURES, LLC If the termination cannot be processed prior to the scheduled date of the charge or transfer, CHICAGO FIT VENTURES, LLC shall refund the debited amount.**(1.12.3)** Cancellation of Prepaid Membership **(1.12.10.1)** If you have a Prepaid Membership, you may not terminate it during the Paid Period (or receive a refund), unless specifically stated above. If you do not renew your Prepaid Membership by the renewal date, your Prepaid Membership automatically expires.

**(1.12.4)** Cancellation of any Term Membership **(1.12.10.1)** ) If you have a term membership, you may request to terminate this Membership Agreement by providing at least ten (10) days notice prior to the next bill date to CHICAGO FIT VENTURES, LLC delivered (a) by U.S. mail to CHICAGO FIT VENTURES, LLC at 616 EAST GOLF ROAD SCHAUMBURG, IL 60173 or (b) by hand to the manager at your Schaumburg facility. The termination will be effective at the end of the Paid Period once all applied cancellation fees and half of any unpaid invoices from the initial term of the membership are paid. You may continue to use the facility during the Paid Period. CHICAGO FIT VENTURES, LLC shall not charge your credit card or initiate any EFT payments which are scheduled to occur more than ten (10) days after the termination notice is received by CHICAGO FIT VENTURES, LLC If the termination cannot be processed prior to the scheduled date of the charge or transfer due to fault of the club, CHICAGO FIT VENTURES, LLC shall refund the debited amount.

**(1.13)** Refunds. Refunds, if applicable, shall be made within fifteen (15) days of receipt of notice of cancellation.

**(1.14)** Change of Membership Type. Any membership can be changed by buying a new membership at the standard price and canceling the previous membership.

**(1.15)** Freeze Policy. (a) Medical. If Member is medically unable to use the CHICAGO FIT VENTURES, LLC facilities, Member may request a freeze of his or her membership in monthly increments for a minimum of 1 month and a maximum of 6 months per year. Members must provide a doctor's note at the time of requesting a freeze. CHICAGO FIT VENTURES, LLC reserves the right to verify the note with the doctor and Member agrees to waive any Doctor/Patient privilege and execute any release required by such doctor solely with regards to the medical reasons

stated in the doctor's note for the medical freeze. (b) Non-medical, if a Member desires to freeze his or her account for a non-medical reason, Member should consult with Member's CHICAGO FIT VENTURES, LLC facility. CHICAGO FIT VENTURES, LLC reserves the right to adjust this freeze policy from time to time at its sole discretion. All requests must be received at least fourteen (14) days prior to Member's next billing date period. Retroactive freezes will not be accepted. Certain fees may apply to any freeze of a Member's membership.

(1.16) Buyer's Indemnity. Buyer assumes full responsibility for any person who becomes a Member under the Agreement and these Terms and Conditions and shall indemnify CHICAGO FIT VENTURES, LLC, its affiliates, agents and employees against any and all liability incurred by such Member during his or her use of any and all CHICAGO FIT VENTURES, LLC facilities.

**2. MEMBER RISK.** Member and Member's guests shall hold CHICAGO FIT VEN-TURES, LLC harmless from any loss, theft, cost, claim, injury, damage or liability ('Damages') incurred as a result of the use of a CHICAGO FIT VENTURES, LLC facility and any other membership activities, except such Damages which result from the willful misconduct or gross negligence of CHICAGO FIT VENTURES, LLC, its affiliates, agents or employees.

(2.1) Member's Health Warranty. Member and Buyer represent that Member is in good health and has no disability, impairment, injury, disease, or ailment, preventing him or her from engaging in active or passive exercise or which could cause increased risk of injury or adverse health consequences as a result of exercise. Member assumes full responsibility for his or her use of a CHICAGO FIT VENTURES, LLC facility and shall indemnify CHICAGO FIT VENTURES, LLC, its affiliates, agents and employees, against any and all Damages arising out of Member's use of the facilities except as otherwise set forth in these Terms and Conditions. Physical examinations by Member's physician are recommended for members before commencing any exercise program, and especially for Members who are at risk, including but not limited to elderly or pregnant Members, or Members unaccustomed to physical exertion, or who have physical limitations, a history of high blood pressure, heart problems or other chronic illnesses, or members who have a history of heart disease.

(2.2) Warning. Use of steroids to increase strength or growth can cause serious health problems. Steroids can keep teenagers from growing to their full height; they can also cause heart disease, stroke, and damaged liver function. Men and women using steroids may develop fertility problems, personality changes, and acne. Men can also experience premature balding and development of breast tissue. These health hazards are in addition to the civil and criminal penalties for unauthorized sale, use, or exchange of anabolic steroids.

(2.3) Medical Disclaimer. Member has been informed and acknowledges that CHICAGO FIT VENTURES, LLC has made no claims as to medical results that can or may be obtained through use of any CHICAGO FIT VENTURES, LLC facility. CHICAGO FIT VENTURES, LLC has neither suggested nor will it suggest any medical treatment to Members. Only licensed medical professionals are qualified to give medical advice. Member represents that he is no medical or physical conditions that would preclude the use of CHICAGO FIT VENTURES, LLC facilities and each Member further represents that he or she has not been instructed by any physician not to use CHICAGO FIT VENTURES, LLC facility or any similar facility.

(2.4) Orientation. Member is strongly encouraged to take advantage of the complimentary initial orientation and ongoing support available to ensure the proper safe and use of all equipment.

(2.5) Activity Risk. Any strenuous athletic or physical activity involves certain risks. Member and Member's guests assume the risk of any all accidents or injuries of any kind that may be sustained by, or in connection with, use of the facilities and release, hold CHICAGO FIT VENTURES, LLC harmless, discharge and absolve CHICAGO FIT VENTURES, LLC, its agents and employees from any and all Damages or responsibility except if such accident or injury is the result of willful misconduct or gross negligence of CHICAGO FIT VENTURES, LLC, its affiliates, agents or employees.

(2.6) Loss of Property. Members and Member's guests are urged not to bring valuables onto the premises of a CHICAGO FIT VENTURES, LLC facility. CHI-CAGO FIT VENTURES, LLC shall not be liable for the disappearance, loss, theft, or damage to personal property, including money, negotiable securities or jewelry of Member or Member's guests.

**(3) GENERAL PROVISIONS (3.1) Members and Guests Rules.** Members and Member's guests shall abide by CHICAGO FIT VENTURES, LLC rules and regulations and any amendments additions thereto which may be made from time to time by CHICAGO FIT VENTURES, LLC at CHICAGO FIT VENTURES, LLC sole discretion.

(3.2) Proof of Membership. Member shall receive one membership card (included with Member's membership) (the "Membership Card") from CHICAGO FIT VENTURES, LLC and must present it to the reception desk personnel each time Member enters a CHICAGO FIT VENTURES, LLC facility. Lost membership cards will be replaced for a fee of five dollars ($5), which may be adjusted from time to time. The card must be replaced if lost. Member is required to notify CHICAGO FIT VENTURES, LLC immediately of the loss of his or her Membership Card, and the Membership Card must be replaced by Member. Membership privileges are limited to the person in whose name the membership is issued. Improper use of the membership will result in confiscation of the Membership Card and can result in immediate cancellation of Member's membership. A Member wishing to use CHICAGO FIT VENTURES, LLC facilities without his or her Membership Card will be required to provide proof of identity. (e.g. valid driver's license, etc.)

(3.3) Day Lockers. Lockers may be provided solely for the benefit and convenience of CHICAGO FIT VENTURES, LLC members. CHICAGO FIT VENTURES, LLC will remove any articles left in a locker overnight. Member must provide his or her own lock and should not leave any valuables in his or her locker.

(3.4) Pets. Pets (not including service animals) and bicycles are not permitted in or around a CHICAGO FIT VENTURES, LLC facility.

(3.5) Dress Code. Proper athletic attire is required. CHICAGO FIT VENTURES, LLC reserves the right to make the final determination in its sole discretion with regard to appropriate attire.

(3.6) Protective Eyewear. Racquet sports players are required to wear eye protection on the courts.

(3.7) Independent Contractors. From time to time, CHICAGO FIT VENTURES, LLC may make the services of independent contractors available to Member or Member's guests. CHICAGO FIT VENTURES, LLC does not warrant or guarantee the quality of these services and does not guarantee that these services will remain available to Member or Member's guests for a period of time.

(3.8) Member Guests. Member's guests are permitted in CHICAGO FIT VEN-TURES, LLC, but only pursuant to such rules, regulations, fees, schedules for guests as then may be in effect. CHICAGO FIT VENTURES, LLC reserves the right to limit the number of times any one guest can use a CHICAGO FIT VENTURES, LLC facility and reserves the right to exclude any Member's guests whose use of the facility, in the sole opinion of CHICAGO FIT VENTURES, LLC, would be detrimental to CHICAGO FIT VENTURES, LLC or any of its members. All Member's guests must register at the front desk with valid identification.

(3.9) Reciprocity and Use Privileges. "PEAK" memberships allow access only to other designated franchised Schaumburg clubs up to 10 times per month.

(3.10) Spotting. CHICAGO FIT VENTURES, LLC recommends to all Members and to all Member's guests, spotting by another member or CHICAGO FIT VEN-TURES, LLC trainer when using any free weights.

(3.11) Change in Membership Information. Member must promptly notify CHI-CAGO FIT VENTURES, LLC in writing of any changes in his or her billing infor-

mation, address or telephone number. Notwithstanding anything else contained herein, all communications from CHICAGO FIT VENTURES, LLC to Member shall be presumed to have been received by Member within five (5) business days after mailing to Member's address on file with CHICAGO FIT VENTURES, LLC at the time of the mailing.

(3.12) Change in Facilities and Operating Hours. As a result of repair, maintenance or special occasions, CHICAGO FIT VENTURES, LLC may be required to restrict the use or temporarily close one or more CHICAGO FIT VENTURES, LLC facilities or halt a CHICAGO FIT VENTURES, LLC activity from time to time. There will be no reduction , suspension, abatement, or apportionment of membership fees or other charges during such time when the above-mentioned occurs. CHICAGO FIT VENTURES, LLC's hours of operation may be modified from time to time without prior notice to Member. CHICAGO FIT VENTURES, LLC reserves the right to change the facility from time to time, to eliminate some facilities and services, to add others, to add, modify and/or eliminate programs, activities, classes or equipment at CHICAGO FIT VENTURES, LLC sole discretion.

(3.13) Special Events. CHICAGO FIT VENTURES, LLC may from time to time reserve the use of its facilities for special events, competitions and private functions.

(3.14) Closing of CHICAGO FIT VENTURES, LLC Facility. It is anticipated that a part of a part of the facility or the entire facility will be temporarily unavailable from time to time while repairs or renovations take place. Management will make every effort to minimize any disruption to members during these periods, and if possible, to schedule any work during off hours or summer months. CHICAGO FIT VENTURES, LLC may be closed for holidays, and may be closed periodically for renovations. CHICAGO FIT VENTURES, LLC may also offer members the use of other conveniently located CHICAGO FIT VENTURES, LLC facilities during the period of unavailability.

(3.15) Interruption of Services. In case of a long term interruption of service (e.g. fire), CHICAGO FIT VENTURES, LLC reserves the right to: (a) freeze memberships and add the lost time once service resumes; (b) transfer the member to another similar CHICAGO FIT VENTURES, LLC facility within a five-mile radius. In the event that an act of God (hurricane, earthquake, national emergency, etc.) causes more than a temporary closing of CHICAGO FIT VENTURES, LLC facility, Member's obligations under the Agreement and these Terms and Conditions will be suspended until such time as use of the facility can be resumed. Obligation for contractual dues will otherwise not be affected unless a CHICAGO FIT VEN-TURES, LLC facility cannot reopen within one year of the interruption of service.

(3.16) Non-Discrimination. CHICAGO FIT VENTURES, LLC represents that it will not discriminate against any person because of sex, race, creed, age, color, national origin, sexual orientation, or ancestry in considering applications for memberships. The minimum age for CHICAGO FIT VENTURES, LLC membership is eighteen (18), unless parental permission and CHICAGO FIT VENTURES, LLC consent is given and approved by CHICAGO FIT VENTURES, LLC at CHICAGO FIT VENTURES, LLC sole discretion.

(3.17) Children's Use. All children under eighteen (18) years of age must be accompanied by such child's parent at all times within a CHICAGO FIT VENTURES, LLC facility unless they are in a supervised activity. Some children's programs require fees to be paid in advance. CHICAGO FIT VENTURES, LLC reserves the right to discontinue use by any child who is unsupervised, or whose behavior is offensive or disruptive.

(3.18) Group Exercise Policies. Each class is limited to a set number of participants. Members should not enter a class late without the instructor's consent. No one will be admitted ten (10) minutes after the scheduled class time. If Member is just starting a group fitness program or has an injury, prenatal conditions or problem that may prevent full participation, please discuss this with the group fitness instructor at least five (5) minutes before class. Proper clothing and footwear must be worn in all group fitness classes. CHICAGO FIT VENTURES, LLC reserves the right to change the group fitness schedule at any time including the addition or deletion of classes, as well as changes in instructors, class times and length of classes. CHICAGO FIT VENTURES, LLC reserves the right to change group fitness policies when necessary and require advanced reservation for heavily attended classes. Reservations may be released within five (5) minutes prior to the scheduled class time and Member may enter on a walk in basis provided there are openings in the class. Member's attending a class shall, in addition to the Terms and Conditions, follow any rules promulgated by such class' instructors.

(3.19) Personal Training. In addition to these Terms and Conditions, any and all personal training provided by CHICAGO FIT VENTURES, LLC shall be pursuant to any additional terms and conditions set forth in a separate personal training contract entered into by a Member and CHICAGO FIT VENTURES, LLC. Use of personal trainers not approved by CHICAGO FIT VENTURES, LLC is prohibited at all CHICAGO FIT VENTURES, LLC facilities. Member may not train other members or guests, conduct business activity or solicit any business at any CHICAGO FIT VENTURES, LLC facility. Any violation of this policy may result in legal action as well as forfeiture of any remuneration received by a Member or guest for such services.

(3.20) Changing the Rules and Regulations. CHICAGO FIT VENTURES, LLC may at is sole discretion change these Terms and Conditions at any time.

(3.21) Entire Agreement. The Agreement, these Terms and Conditions, and all rules and regulations of CHICAGO FIT VENTURES, LLC, as revised from time to time, constitute the entire and exclusive agreement between CHICAGO FIT VEN-TURES, LLC and Member, and supersedes all prior promises, representations, understandings and/or agreements relating to this membership purchase. The Agreement may be modified only by an instrument in writing; however, CHICAGO FIT VENTURES, LLC or any assignee of the Agreement is authorized to correct patent errors in the Agreement (and in other related documents) and Member and/or Buyer may verbally authorize payment of the outstanding balance of the membership fee by the automatic payment plan. CHICAGO FIT VENTURES, LLC may void the Agreement if it is not completed by a CHICAGO FIT VENTURES, LLC employee in accordance with the current pricing and payment programs, or if there has been any misrepresentation by Member. No written alterations or amendments to the Agreement and/or these Terms and Conditions shall be valid and CHICAGO FIT VENTURES, LLC employees are not authorized to make any changes written and/or verbal, additions or modifications to this Agreement. If you have any questions regarding this Agreement or these Terms and Conditions please contact CHICAGO FIT VENTURES, LLC Member Services at 616 EAST GOLF ROAD SCHAUMBURG, IL 60173 or email CHICAGO FIT VENTURES, LLC at manager@crunchschaumburg.com.

Member affirms, acknowledges and attests that Member's mailing address, telephone number, and e-mail address provided on the face of this agreement are accurate and were provided by Member voluntarily. Subject to applicable law, Member agrees that Crunch and ABC Financial Services, Inc., including its agents and affiliates, may contact Member at any mailing address, phone number or e-mail address set forth on the face of this agreement, or subsequently provided by Member to Crunch and/or ABC Financial Services, Inc.

By initialing below, member authorizes club facility and/or its service providers, including, without limit, ABC Financial Services, Inc. To deliver, or cause to be delivered to member, at the telephone numbers provided by member in this agreement, telemarketing calls, telemarketing texts and similar communications using an automatic telephone dialing system or an artificial prerecorded voice. Member acknowledges that he/she is not being required to execute this consent (directly or indirectly) as a condition of purchasing any goods or services.

Member Initials _JK_

FOR ALL BILLING INQUIRIES, PLEASE CALL ABC FINANCIAL AT:
1-888-827-9262
www.abcfinancial.com



**Crunch Schaumburg**
616 East Golf Road
Schaumburg IL    60173
(847) 233-1232

| Club #5920 | Agreement #: | 592001610 |
|---|---|---|
| | Barcode: | SCH101198 |
| | Date: | 06/29/2017 |

**PT Agreement**

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of sex or marital status. The agency that administers compliance with the law is the Federal Trade Commission, Equal Credit Opportunity, Washington, D.C. 20580.

| JENNIFER | KNOBLOCH | | |
|---|---|---|---|
| First Name | Last | Middle Initial | Social Security # |
| 1415 NOTTINGHAM LN | HOFFMAN ESTATES | IL | 60169-2642 |
| Street Address | City | State | Zip Code |
| (847) 714-3140 | (000) 000-0000 | 05/12/1993 | Female |
| Primary Phone Number | Work Phone | Birth Date | Gender |
| | (000) 000-0000 | | |
| In Case of Emergency, Call (Name) | Emergency Phone | | |

| Drivers License # | Employer | Occupation |
|---|---|---|
| Guest Pass - Trial Membership | (847) 714-3140 | knobloch|2@yahoo.com |
| Source | Cell Phone | E-Mail Address |

### Privileges, Notices, Disclosures & Agreements

Training Program     POS PEAK 3MO 1xWeek

1. Agreement begins:          06/29/2017
2. Package Value (per invoice):     None
3. Package Quantity (per invoice):   4
4. Price Per Unit:            $55.00
5. Purchased Today (pre tax):   Qty   4   ($170.00)

**Additional Items:**

1. _____  _____
2. _____  _____
3. _____  _____
4. _____  _____

Additional Item Total:

| Subtotal: | $170.00 |
|---|---|
| Tax: | $0.00 |
| Total Amount Paid Today: | $170.00 |
| Balance Due: | $340.00 |
| Grand Total: | $510.00 |

| Billing Frequency: | | Monthly |
|---|---|---|
| Number of Payments | Payment Amount (post tax) | Payment Due Date |
| 2 | $  $170.00 | 07/29/2017 |

**AUTOMATIC RENEWAL PROGRAM:**
The membership will automatically renew on a month-to-month basis after the initial term at the current rate without prior notification.
Member Renewal Initials: _____

NOTICE OF LICENSE FOR FITNESS HOLDINGS, LLC ("FITNESS HOLDINGS") NEITHER CRUNCH, LLC NOR ANY RELATED CORPORATION IS THE OWNER OF THIS CRUNCH FACILITY AND FITNESS CENTER OPERATION. FITNESS HOLDINGS, LLC IS THE OWNER OF THIS FACILITY AND FITNESS CENTER OPERATION AND HAS BEEN LICENSED BY CRUNCH, LLC TO USE THE CRUNCH MARKS IN CONNECTION WITH ITS OPERATION. NEITHER CRUNCH, LLC NOR ANY RELATED CORPORATION IS CONTRACTUALLY OR OTHERWISE LIABLE TO YOU AS FITNESS HOLDINGS, LLC IS SOLELY LIABLE FOR THE DEBTS AND OBLIGATIONS OF THIS FACILITY AND FITNESS CENTER OPERATION.

PERSONAL TRAINING SERVICES: We are excited to help you achieve your fitness goals through your purchase of these individual fitness instruction sessions. Sessions are not transferable. Member must have current Fitness Holdings membership privileges and may not purchase, or use, Personal Training sessions during any period Member's membership privileges are cancelled or suspended.

Member must sign for each Personal Training session at the time of service by providing their signature. Sessions, which are not cancelled at least 24 hours before their scheduled time will be forfeited. Late arrival for sessions will result in forfeiture of any missed session time. All fees for this Personal Training Agreement are earned by Fitness Holdings upon receipt of payment. Fitness Holdings makes a reasonable effort to provide the personal trainer of choice, however, Member is purchasing a program and not the services of an individual trainer. If the personal trainer of choice is not available, another trainer will be assigned and Member is not entitled to a refund.

Term agreements cannot be cancelled prior to the completion of their term and is month to month on auto renewal thereafter. Month to month agreement is on auto renewal and requires a written cancellation notice at least 10 days prior to billing date. All paid sessions must completed within 12 months of purchase date. Weekly sessions are based on 4 weeks per month.

By signing below, member and Authorized Person (if any) acknowledges each has read this entire Personal Training Agreement and understands and agrees to its terms. Additionally, Member and/or Buyer acknowledge receipt of a true copy of this Personal Training Agreement.

By execution of a Personal Training Agreement with Fitness Holdings, LLC ("Fitness Holdings"), the Member or authorized person obligated under this Agreement ("Buyer") agrees to the following Terms and Conditions ("Terms and Conditions") (see back page):

BUYER'S RIGHT TO CANCEL-You, the buyer, may cancel this agreement at any time prior to midnight of the fifth business day after the date of this agreement, excluding Sundays and holidays. To cancel this agreement, mail or deliver a signed and dated notice, or send a telegram which states that you, the buyer, are cancelling this agreement, or words of similar effect. Such notice shall be sent to Crunch 616 East Golf Road          Schaumburg IL   60173   . Date this contract was signed:   06/29/2017   . You are entitled to receive your refund within 10 days of receipt of notice of cancellation, less payment for any health club services rendered prior to such cancellation.

**I understand that I am signing a** [x] **3-month,** [ ] **6 month, or** [ ] **month to month contract.**
The term of this agreement shall not exceed 36 months.

(" _____ ") IS THE OWNER OF THIS FACILITY AND FITNESS CENTER OPERATION AND HAS BEEN LICENSED BY AN AFFILIATE OF CRUNCH, LLC TO USE THE CRUNCH FITNESS MARKS IN CONNECTION WITH ITS OPERATION. NEITHER CRUNCH, LLC NOR ANY RELATED ENTITY IS THE OWNER OF THIS   5920   FACILITY AND FITNESS CENTER OPERATION. NEITHER CRUNCH, LLC NOR ANY RELATED ENTITY IS CONTRACTUALLY OR OTHERWISE LIABLE TO YOU AS _____ .IS SOLELY LIABLE FOR THE DEBTS AND OBLIGATIONS OF THIS FACILITY AND FITNESS CENTER OPERATION.

Club Representative Signature: _____
CLUB REPRESENTATIVE

_____
SERVICE EMPLOYEE

Parent or Guardian Signature: _____
PARENT OR GUARDIAN

MEMBER

| abc FINANCIAL | PLEASE ATTACH A VOID OR BLANK CHECK REQUEST FOR PREAUTHORIZED PAYMENT<br>I hereby request the privilege of paying to ABC Financial Services, Inc ("The Company"), Sherwood, AR 72124, and further authorize the Company to draw items (checks, electronic fund transfers, charge card) for the purpose of paying said payments, including any late fees or service fees, on the account of | **REQUIRED FOR ALL EFT AND CREDIT CARD DRAFT ACCOUNTS** |
|---|---|---|
| Payment Method:     EFT | | |

| | | XXXXX9780 | Checking | JENNIFER KNOBLOCH |
|---|---|---|---|---|
| BANK NAME | ROUTING NUMBER (9 DIGITS) | ACCOUNT NUMBER | ACCOUNT TYPE | ACCOUNT OWNER |

| | | | | |
|---|---|---|---|---|
| CARD TYPE | ACCOUNT NUMBER | EXPIRATION M/Y | CARD OWNER |

Subject to the following conditions:
(1) The items shall be drawn on or about the date or dates of the Payment Schedule. The transactions on your bank statement will constitute receipts for payment on your account.
(2) If the regular payments are set forth on the Payment Schedule should vary in amount, you are entitled to notice at least 10 days before each payment of when it will be made and how much it will be. However, by executing this preauthorization, you choose to instead get this notice only when the payment would differ by more than $50.00 from the most recent payment.
(3) By executing this agreement, you acknowledge your awareness that certain disclosures required by the Electronic Funds Transfer Act and its regulations are available for your review at the Company's website: www.abcfinancial.com under terms and conditions.
(4) The privilege of making payments under this arrangement may be revoked by the Company if any item is not paid upon presentation.
(5) If this preauthorization payment arrangement is revoked for any reason, this does not release you from your obligation (Payment Schedule).
(6) A service fee will be assessed and drafted for any check, draft, credit card, or order returned for insufficient funds or any other reason. A late fee will be assessed and drafted should any monthly payment become past due.
(7) This preauthorization payment arrangement shall apply to the following Applicant(s):

Date   06/29/2017   Account Holder Signature _____   Account Holder Signature: _____

7618 RS 20140508

1. **Consumer's Right of Rescission:**
   A. If this contract for health studio services requires payment of one thousand five hundred dollars ($1,500) to two thousand dollars ($2,000), inclusive, including initiation fees or initial membership fees, by the person receiving the services or the use of the facility, the person shall have the right to cancel the contract within 20 days after the contract is executed.
   B. If this contract for health studio services requires payment of two thousand one dollars ($2,001) to two thousand five hundred dollars ($2,500), inclusive, including initiation fees or initial membership fees, by the person receiving the services or the use of the facility, the person shall have the right to cancel the contract within 30 days after the contract is executed.
   C. If a contract for health studio services requires payment of two thousand five hundred one dollars ($2,501) or more, including initiation fees or initial membership fees, by the person receiving the services or the use of the facility, the person shall have the right to cancel the contract within 45 days after the contract is executed.

**ADDITIONAL MEMBERSHIP AGREEMENT TERMS**
**1. MEMBERSHIP PAYMENT AND TERMS**
(1.1) Description of Services. This is a club membership agreement and not an optional services agreement such as personal training which is a separate agreement. This club membership agreement entitles Member to access the facility stipulated above during business hours. This club membership agreement provides Member access to cardiovascular, strength and conditioning machines. It also provides Member access to certain exercise classes if available at the facility.
(1.2) Rules, Regulations and Schedules. Member agrees to abide by the rules, regulations and schedules of _____, which may be posted at a facility or issued orally, and which may be amended from time to time at _____ sole discretion. Upon joining, Member and or Buyer must pay the appropriate initial charges. At the sole discretion of _____ a Member's membership may be revoked or suspended at any time if in the judgment of _____ : (a) Member consistently fails to observe the Rules and Regulations, (b) has otherwise behaved in a manner contrary to the best interests of _____ or any of _____ Members, (c) Member has instituted any type or legal action against _____ including but not limited to civil actions, arbitrations and/or mediations, and/or (d) _____ has instituted any type of legal action including but not limited to civil actions, arbitrations and/or mediations against Member.
(1.3) Member's Obligation. Member and/or Buyer shall not be relieved of the obligation to make payments agreed to and no deduction from any payment shall be made because of Member's failure to use the _____ facilities. Dues are for the period stated in the Agreement.
(1.4) Initiation Fee. There may be a one-time initiation fee which Member and/or Buyer shall be required to pay upon execution of the agreement and acceptance of these Terms and Conditions with _____ or as otherwise agreed to by _____. This fee will change from time to time at _____ discretion. This fee is nonrefundable. Resignation from _____ shall not terminate the obligation to pay the initiation fee in full. There will be no further initiation fee as long as the Membership has not terminated or expired.
(1.5) Monthly Dues, Annual Fee, and other Fees. Member or Buyer shall pay, in advance, monthly Membership dues as set forth in the agreement. _____ has the right to add to the monthly Membership dues any tax imposed by the government.
(1.6) Prepaid Membership Renewal Amount. If the Member has a Prepaid Membership, then _____ will not increase the Initial Annual Renewal amount on page 1 of this agreement, but may increase all subsequent annual renewal amounts. _____ will automatically renew all renewable memberships at subsequent renewal rate if membership is not canceled prior to expiration date. _____ has the right to add to the Prepaid Membership any tax imposed by the government.
(1.7) Form of Payment. Monthly dues and incidental charges are payable by Electronic Funds Transfer ("EFT") from the Member or Buyer's checking account, savings account, credit card account, or debit card account. Members or Buyers must authorize payments to be made through a third party administered electronic funds transfer system. Members or Buyers maintain full control and privacy over their accounts at all times, and the transfer of the funds affects only those fees that have prior authorization of the Member or Buyer. The transfer will take place automatically once every month unless _____ notifies the Member or Buyer otherwise. If _____ does not collect Member's monthly dues using the form of payment provided by the Member or Buyer, then _____ may continue attempting to collect Member's monthly dues, plus any applicable fees, using the form of payment provided by the Member or Buyer.
(1.8) Dishonored Check or Credit Card. If any check, account debit, or credit card charge payable to _____ by Member and/or Buyer is returned, rejected or dishonored, _____ management shall, in each instance (a) assess a charge equal to any charge imposed by the financial institution, any costs and expenses incurred in connection with collection plus an administrative fee which may be adjusted from time to time, and (b) collect the current and past due balance owed _____ in any subsequent month.
(1.9) Limited Memberships. Memberships may be limited so that Members may have reasonable access to _____ facilities. It is to be expected that there may be occasional delays, especially during peak hours, in using the fitness equipment; or that Members may not always be able to attend preferred exercise classes. The availability of classes and equipment are subject to demand and are available on a first-come first-served basis.
(1.10) Unpaid Balances. All balances owed by Member and or Buyer that are 30, 60 and 90 days in arrears are subject to monthly service charges of $15 per month in arrears. These fees may be adjusted from time to time. Any unpaid balances for membership fees, goods or services past thirty (30) days may result in suspension of membership privileges. Members and/or Buyer shall be obligated to pay any cost incurred by _____ for collection. The renewal fee for paid in full annual memberships must be paid by 12:00 midnight on the anniversary date of the annual membership or Member's privilege to use _____ facilities may be suspended and a new initiation fee will be required.
_____ reserves the right to charge past due balances, plus applicable charges, to the Membership account under the EFT authorization.
(1.11) Membership Term. The period covered by the first month's dues, as well as any additional days of Membership for which payment is received by _____, are the "Paid Period" for the Dues Membership. The "Paid Period" is the term of this Membership Agreement.
(1.12) Cancellation of Membership. (1.12.1) Member has five (5) business days to cancel the Agreement from date of purchase. To cancel, mail a letter to the following address:
at: 616 East Golf Road Schaumburg
IL 60173 It is recommended that (you) Member send (your) Member's cancellation notice by registered or certified mail or statutory overnight delivery, return receipt requested, in order to prove that (you) Member did cancel. If Member hand delivers Member's cancellation to a _____ INC facility, Member should be sure to receive a signed statement from a _____ employee acknowledging Members' cancellation.
(1.12.2) Death or Disability. If, by reason of death or disability, you are unable to receive all of the services for which you contracted under this Agreement, you and your estate shall be relieved from the obligation of making payment for services other than those received prior to your death or the onset of

your disability. If you prepaid any sum for services, so much of the sum as allocable to services not taken prior to your death or disability shall be promptly refunded to you or your representative. For purposes of this provision "disability" means a condition which precludes you from physically using the facilities. Your disability must be confirmed in writing by a physician. Member may cancel his or her contract and _____ is entitled to a reasonable predetermined fee in such event in addition to an amount equal to the value of services made available for use by Members. This amount shall be computed by dividing the months expired under the membership term. Member or Member's estate must provide reasonable evidence of disability or death.
(1.12.3) Close of Facility and/or Move. Under this contract, no further payments shall be due to anyone, including any purchaser of any note associated with or contained in this contract, in the event the _____ facility at which the Agreement in entered into ceases operation and fails to offer an alternate location, substantially similar, within ten (10) miles .
(1.12.4) New Facility. You may cancel the contract and receive a pro rata refund if the health club fails to provide the specific facilities advertised or offered in writing by the time indicated. Performance of the agreed upon services will begin within six months after the date of this Agreement.
(1.12.5) Opening of Club. If the facility first identified above has not opened as of the date of this Agreement, Member and or Buyer may cancel this Membership Agreement at any time prior to midnight of the fifth (5th) business day after the date such facility opens for business, excluding Sundays and holidays. To cancel this Membership Agreement, mail or deliver a signed and dated notice stating that Member and/or Obligor, as applicable, is canceling this Membership Agreement, or words of similar effect. Such notice shall be sent to _____ at 616 East Golf Road Schaumburg IL 60173, or delivered to the Crunch facility. Member or Obligor, as applicable, is entitled to receive a refund within ten (10) days of receipt of the notice of cancellation, less payment for any services rendered prior to such cancellation.
(1.12.6) Relocation. Member may cancel this Agreement if they can provide proof that Member is permanently moving more than twenty five (25) miles away from any _____ facility. Proof such as utility bill, lease agreement, driver's license, military orders or any other document that could validate such proof will be accepted. Should you move further than 25 miles from the club and be unable to transfer this membership to a comparable facility, you shall be relieved from your obligation of making payment for services other than those received prior to your move, and if you prepaid any sum for services other than those received prior to your move, so much of such sum as is allocable to services you have not received shall be promptly refunded. Notwithstanding the above you will be charged an administrative fee of $25 if you cancel this Agreement .
(1.12.7) Material Changes in Services. Member may cancel this Agreement if the health club materially changes the services promised as part of the initial contract.
(1.12.8) Written Requests. Memberships cannot be cancelled by phone or verbal conversation. Cancellation requests will only be honored if sent in writing or filled out at a _____ facility. All paperwork is deemed a request until _____ employee can validate paperwork and approve such cancellation. A cancellation that has been denied will be sent in writing back to Member along with reason of denial or instructions for acceptance and refund.
(1.12.9) Cancellation of Monthly Membership. (1.12.9.1) If you have a monthly payment membership, you may terminate this Membership Agreement by providing at least ten (10) days notice prior to the next bill date to _____ delivered (a) by U.S. mail to 616 East Golf Road Schaumburg, IL 60173 or (b) by hand to the manager at your Crunch facility. The termination will be effective at the end of the Paid Period, and you may continue to use the facility during the Paid Period. _____ shall not charge your credit card or initiate any EFT payments which are scheduled to occur more than ten (10) days after the termination notice is received by _____. If the termination cannot be processed prior to the scheduled date of the charge or transfer, _____ shall refund the debited amount.
(1.12.10) Cancellation of any Term Membership(1.12.10.1) If you have a term membership, you may request to terminate this Membership Agreement by providing at least ten (10) days notice prior to the next bill date to _____ delivered (a) by U.S. mail to 616 East Golf Road Schaumburg, IL 60173 or (b) by hand to the manager at your Crunch facility. The termination will be effective at the end of the Paid Period once all applied cancellation fees and half of any unpaid services from the initial term of the agreement are paid. You may continue to use the facility during the Paid Period _____ shall not charge your credit card or initiate any EFT payments which are scheduled to occur more than ten (10) days after the termination notice is received by _____. If the termination cannot be processed prior to the scheduled date of the charge or transfer due to fault of the club, _____ shall refund the debited amount.
(1.13) Refunds. Refunds, if applicable, shall be made within fifteen (15) days of receipt of notice of cancellation.
(1.14) Change of Membership Type. Any membership can be changed by buying

7018 PT 20140508

a new membership at the standard price and canceling the previous membership.
**(1.15) Freeze Policy.** (a) Medical. If Member is medically unable to use the
facilities, Member may request a freeze of his or her membership
in monthly increments for a maximum of 1 month and a maximum of 6 months per
year. Members must provide a doctor's note at the time of requesting a freeze.
reserves the right to verify the note with the doctor and
Member agrees to waive any Doctor/Patient privilege and execute any release
required by such doctor solely with regards to the medical reasons stated in the
doctor's note for the medical freeze. (b) Non-medical, if a Member desires to
freeze his or her account for a non-medical reason, Member should consult with
Member's                                              facility.            reserves the right
to adjust this freeze policy from time to time at is sole discretion. All requests must
be received at least fourteen (14) days prior to Member's next billing date period.
Retroactive freezes will not be accepted. Certain fees may apply to any freeze of
a Member's membership.
**(1.16)** Buyer's Indemnity. Buyer assumes full responsibility for any person who
becomes a Member under the Agreement and these Terms and Conditions and
shall indemnify                          its affiliates, agents and employees against
any and all liability incurred by such Member during his or her use of any and all
facilities.
**2. MEMBER RISK.** Member and Member's guests shall hold
harmless from any loss, theft, cost, claim, injury, damage or liability ("Damages")
incurred as a result of the use of a                          facility and any other mem-
bership activities, except such Damages which result from the willful misconduct
or gross negligence of                          , its affiliates, agents or employees.
**(2.1)** Member's Health Warranty. Member and Buyer represent that Member is in
good health and has no disability, impairment, injury, disease, or ailment, prevent-
ing him or her from engaging in active or passive exercise or which could cause
increased risk of injury or adverse health consequences as a result of exercise.
Member assumes full responsibility for his or her use of a
facility and shall indemnify                          , its affiliates, agents and em-
ployees, against any and all Damages arising out of Member's use of the facilities
except as otherwise set forth in these Terms and Conditions. Physical examinations
by Member's physician are recommended for members before commencing any
exercise program, and especially for Members who are at risk, including but not
limited to elderly or pregnant Members, or Members unaccustomed to physical
exertion, or who have physical limitations, a history of high blood pressure, heart
problems or other chronic illnesses, or members who have a history of heart disease.
**(2.2) Warning. Use of steroids to increase strength or growth
can cause serious health problems. Steroids can keep teenag-
ers from growing to their full height; they can also cause heart
disease, stroke, and damaged liver function. Men and women
using steroids may develop fertility problems, personality
changes, and acne. Men can also experience premature bald-
ing and development of breast tissue. These health hazards
are in addition to the civil and criminal penalties for unauthor-
ized sale, use, or exchange of anabolic steroids.**
**(2.3)** Medical Disclaimer. Member has been informed and acknowledges that
has made no claims as to medical results that can or may
be obtained through use of any                          facility.
has neither suggested nor will it suggest any medical treatment to Members.
Only licensed medical professionals are qualified to give medical advice. Member
represents that there is no medical or physical conditions that would preclude the
use of                          facilities and each Member further represents that
he or she has not been instructed by any physician not to use
facility or any similar facility.
**(2.4)** Orientation. Member is strongly encouraged to take advantage of the com-
plimentary initial orientation and ongoing support available to ensure the proper
safe and use of all equipment.
**(2.5)** Activity Risk. Any strenuous athletic or physical activity involves certain risks
Member and Member's guests assume the risk of any all accidents or injuries of
any kind that may be sustained by, or in connection with, use of the facilities and
release, hold                          harmless, discharge and absolve
, its agents and employees from any and all Damages or responsibility
except if such accident or injury is the result of willful misconduct or gross negligence
of                          its affiliates, agents or employees.
**(2.6)** Loss of Property. Members and Member's guests are urged not to bring
valuables onto the premises of a                          facility.
shall not be liable for the disappearance, loss, theft, or damage to
personal property, including money, negotiable securities or jewelry of Member
's guests.
**(3) GENERAL PROVISIONS (3.1)** Members and Guests Rules. Members and
Member's guests shall abide by                          rules and regulations and
any amendments and/or modifications thereto which may be made from time to
time by

**(3.2)** Proof of Membership. Member shall receive one membership card (included
with Member's membership) (the "Membership Card") from
and must present it to the reception desk personnel each time Member enters a
facility. Lost membership cards will be replaced for a fee
of five dollars ($5), which may be adjusted from time to time. The card must be
replaced if lost. Member is required to notify                          immediately
of the loss of his or her Membership Card, and the Membership Card must be
replaced by Member. Membership privileges are limited to the person in whose
name the membership is issued. Improper use of the membership will result in
confiscation of the Membership Card and can result in immediate cancellation of
Member's membership. A Member wishing to use                          facilities
without his or her Membership Card will be required to provide proof of identity.
(e.g. valid driver's license, etc.)
**(3.3)** Day Lockers. Lockers may be provided solely for the benefit and convenience
of                          members.                          will remove any articles
left in a locker overnight. Member must provide his or her own lock and should not
leave any valuables in his or her locker.
**(3.4)** Pets. Pets (not including service animals) and bicycles are not permitted in
or around a                          facility.
**(3.5)** Dress Code. Proper athletic attire is required.                          reserves
the right to make the final determination in its sole discretion with regard to ap-
propriate attire.
**(3.6)** Protective Eyewear. Racquet sports players are required to wear eye pro-
tection on the courts.
**(3.7)** Independent Contractors. From time to time,                          may
make the services of independent contractors available to Member or Member's
guests.                          does not warrant or guarantee the quality of these
services and does not guarantee that these services will remain available to Member
or Member's guests for a period of time.
**(3.8)** Member Guests. Member's guests are permitted in
but only pursuant to such rules, regulations, fees, schedules for guests as then may
be in effect.                          reserves the right to limit the number of times
any one guest can use a                          facility and reserves the right to
exclude any Member's guests whose use of the facility, in the sole opinion of
would be detrimental to                          or any of its mem-
bers. All Member's guests must register at the front desk with valid identification.
**(3.9)** Reciprocity and Use Privileges. "PEAK" memberships allow access only to
other designated franchised Crunch clubs up to 10 times per month.
**(3.10)** Spotting.                          recommends to all Members and to all
Member's guests, spotting by another member or                          trainer
when using any free weights.
**(3.11)** Change in Membership information. Member must promptly notify
in writing of any changes in his or her billing information, address

or telephone number. Notwithstanding anything else contained herein, all com-
munications from                          to Member shall be presumed to have
been received by Member within five (5) business days after mailing to Member's
address on file with                          at the time of the mailing.
**(3.12)** Change in Facilities and Operating Hours. As a result of repair, mainte-
nance or special occasions,                          may be required to restrict the
use or temporarily close one or more                          facilities or half a
activity from time to time. There will be no reduction , suspension,
abatement, or apportionment of membership fees or other charges during such
time when the above-mentioned occurs.                          's hours of operation
may be modified from time to time without prior notice to Member.
reserves the right to change the facility from time to time, to eliminate some
facilities and services, to add others, to add and/or eliminate programs.
activities, classes or equipment at                          sole discretion.
**(3.13)** Special Events.                          may from time to time reserve the
use of its facilities for special events, competitions and private functions.
**(3.14** Closing of                          Facility. It is anticipated that a part of a
part of the facility or the entire facility will be temporarily unavailable from time to
time while repairs or renovations take place. Management will make every effort
to minimize any disruption to members during these periods, and if possible, to
schedule any work during off-hours or summer months.                          may
be closed for holidays, and may be closed periodically for renovations.
may also offer members the use of other conveniently located
facilities during the period of unavailability.
**(3.15)** Interruption of Services. In case of a long term interruption of service
(e.g. fire),                          reserves the right to: (a) freeze memberships
and add the lost time once service resumes; (b) transfer the member to another
similar                          facility within a five-mile radius. In the event that an
act of God (hurricane, earthquake, national emergency, etc.) causes more than a
temporary closing of                          facility, Member's obligations under the
Agreement and these Terms and Conditions will be suspended until such time as
use of the facility can be resumed. Obligation for contractual dues will otherwise
not be affected unless a                          facility cannot reopen within one
year of the interruption of service.
**(3.16)** Non-Discrimination.                          represents that it will not
discriminate against any person because of sex, race, creed, age, color, national
origin, sexual orientation, or ancestry in considering applications for memberships.
The minimum age for                          membership is eighteen (18), unless
parental permission and                          consent is given and approved by
at                          sole discretion.
**(3.17)** Children's Use. All children under eighteen (18) years of age must be ac-
companied by such child's parent at all times while a                          facility
unless they are in a supervised activity. Some children's programs require fees to
be paid in advance.                          reserves the right to discontinue use
by any child who is unsupervised, or whose behavior is offensive or disruptive.
**(3.18)** Group Exercise Policies. Each class is limited to a set number of partici-
pants. Members should not enter a class late without the instructor's consent. No
one will be admitted ten (10) minutes after the scheduled class time. If Member is
just starting a group fitness program or has an injury, prenatal conditions or prob-
lem that may prevent full participation, please discuss this with the group fitness
instructor at least five (5) minutes before class. Proper clothing and footwear must
be worn in all group fitness classes.                          reserves the right to
change the group fitness schedule at any time including the addition or deletion of
classes, as well as changes in instructors, class times and length of classes.
reserves the right to change group fitness policies when necessary
and require advanced reservations for heavily attended classes. Reservations may
be released within five (5) minutes prior to the scheduled class time and Member
may enter on a walk in basis provided there are openings in the class. Member's
attending a class shall, in addition to the Terms and Conditions, follow any rules
promulgated by such class' instructors.
**(3.19)** Personal Training. In addition to these Terms and Conditions, any and
all personal training provided by                          shall be pursuant to any
additional terms and conditions set forth in a separate personal training contract
entered into by a Member and                          . Use of personal trainers
not approved by                          is prohibited at all
facilities. Member may not train other members or guests,
conduct business activity or solicit any business at any
facility. Any violation of this policy may result in legal action as well as forfeiture of
any remuneration received by a Member or guest for such services.
**(3.20)** Changing the Rules and Regulations.                          may at is
sole discretion change these Terms and Conditions at any time.
**(3.21)** Entire Agreement. The Agreement, these Terms and Conditions, and all rules
and regulations of                          , as revised from time to time, constitute
the entire and exclusive agreement between                          and Member,
and supersedes all prior promises, representations, understandings and/or agree-
ments relating to this membership purchase. The Agreement may be modified
only by an instrument in writing; however,                          or any assignee
of the Agreement is authorized to correct patent errors in the Agreement (and in
other related documents) and Member and/or Buyer may verbally authorize pay-
ment of the outstanding balance of the membership fee by the automatic payment
plan.                          may void the Agreement if it is not completed by a
employee in accordance with the current pricing and pay-
ment programs, or if there has been any misrepresentation by Member. No written
alterations or amendments to the Agreement and/or these Terms and Conditions
shall be valid and                          employees are not authorized to make
any changes written and/or verbal, additions or modifications to this Agreement. If
you have any questions regarding this Agreement or these Terms and Conditions
please contact                          Member Services at 616 East Golf Road
Schaumburg    IL    60173    or email                          at

**(3.22)** Governing Law. This Membership Agreement shall be interpreted under
the laws of the State of California. Any litigation under this Membership Agreement
shall be resolved in the courts of the State of California.

Subject to applicable law, Member agrees that ABC Financial Services, Inc. may
contact Member at any mailing address, phone number or e-mail address set forth
on the face of this agreement, or any other address subsequently provided to, or
obtained by, ABC Financial Services, Inc.

FOR ALL BILLING INQUIRIES, PLEASE CALL ABC FINANCIAL AT: 1-888-827-9262
www.abcfinancial.com

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| Summons - Alias Summons | |

(01/25/17) CCG N001

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Jennifer Knobloch

_____
(Name all parties)

v.

ABC Financial Services, Inc.
_____

No. _____

2017CH16187
CALENDAR/ROOM 07
TIME 00:00
Class Action

*ABC Financial Services, Inc.*
*c/o Dylan H. Potts*
*425 W. Capitol Ave. Suite 380*
*Little Rock, AR 72201*

### ◉ SUMMONS ○ ALIAS SUMMONS

To each Defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

- ☑ Richard J. Daley Center, 50 W. Washington, Room _____, Chicago, Illinois 60602
- ☐ District 2 - Skokie
  5600 Old Orchard Rd.
  Skokie, IL 60077
- ☐ District 3 - Rolling Meadows
  2121 Euclid
  Rolling Meadows, IL 60008
- ☐ District 4 - Maywood
  1500 Maybrook Dr.
  Maywood, IL 60153
- ☐ District 5 - Bridgeview
  10220 S. 76th Ave.
  Bridgeview, IL 60455
- ☐ District 6 - Markham 16501
  S. Kedzie Pkwy. Markham,
  IL 60428
- ☐ Child Support: 50 W.
  Washington, LL-01,
  Chicago, IL 60602

You must file within 30 days after service of this Summons, not counting the day of service.

IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the Officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

☑ Atty. No.: 56618

Name: McGuire Law, P.C.

Atty. for: Jennifer Knobloch

Address: 55 W. Wacker Dr. 9th Fl.

City/State/Zip Code: Chicago, IL 60601

Telephone: 312-893-7002

Primary Email: dgerbie@mcgpc.com

Secondary Email: emeyers@mcgpc.com

Tertiary Email: mmcguire@mcgpc.com

Witness: DOROTHY BROWN DEC 07 2017

_____

_____
DOROTHY BROWN, Clerk of Court

Date of Service: _____
(To be inserted by officer on copy left with Defendant or other person)

**Service by Facsimile Transmission will be accepted at:

_____

_____
(Area Code)    (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

Page 1 of 1